******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************************

BEATRICE FORGIONE *v.* MENNATO FORGIONE
(AC 36991)

Keller, Bright and Beach, Js.

*Syllabus*

The defendant, whose marriage to the plaintiff previously had been dissolved, appealed to this court from the judgment of the trial court opening the judgment of dissolution and reissuing financial orders. He claimed that the court erred in its method of dividing the parties' assets because it failed to take into account an advance payment made by the plaintiff to the defendant against the defendant's equitable distribution and the resultant transfer of equity in the marital residence to the plaintiff. On appeal, this court had determined that, pursuant to statute (§ 46b-86 [a]), the trial court lacked subject matter jurisdiction to open the dissolution judgment for the purpose of redividing the parties' marital asssets and, accordingly, vacated the court's judgment and remanded the case for further proceedings. Thereafter, our Supreme Court granted the plaintiff's petition for certification to appeal and remanded the case to this court for reconsideration in light of *Reinke* v. *Sing* (328 Conn. 376). On remand, *held*:

1. Where, as here, the parties entered into a postjudgment stipulation to open the dissolution judgment so that the court could address anew all financial matters, including the division of assets, the trial court had subject matter jurisdiction and properly exercised its statutory authority to open the dissolution judgment.

2. The defendant could not prevail on his claim that the trial court erred in its method of dividing the parties' assets; although the defendant did not preserve his claim properly because he failed to distinctly raise it before the trial court, this court exercised its discretion to consider the merits of the claim, which was unavailing, as the trial court considered the advance payment when it issued new financial orders and ordered the defendant to transfer his title to the marital residence to the plaintiff, the defendant misrepresented the plaintiff's financial assets by affording her cetain additional cash for the advance payment that was not encumbered by a corresponding liability, there having been no indication that the plaintiff readily had cash in the amount of the advance payment available to pay to the defendant, and the record having indicated that the plaintiff had obtained the advance payment by way of a personal loan, and, thus, the defendant's claim that the plaintiff received a net gain in the amount of the advance payment as a result of the transfer of assets related to the marital home found no support in the record.

Argued September 11—officially released December 11, 2018

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk, where the court, *Hon. Stanley Novack*, judge trial referee, rendered judgment dissolving the marriage and granting certain other relief; thereafter, the court, *Emons, J.*, approved the stipulation of the parties to open the judgment as to financial issues; subsequently, the court, *Schofield, J.*, issued certain orders; thereafter, the court, *Schofield, J.*, granted the defendant's motion for reargument and issued certain orders, and the defendant appealed to this court, which vacated the judgment and remanded the case for further proceedings; subsequently, the defendant, on the granting of certification, appealed to our Supreme Court, which remanded the case to this court for reconsideration. *Affirmed.*

*Thomas C. C. Sargent*, for the appellant (defendant)

*Norman A. Roberts, II*, with whom, on the brief, was *Tara C. Dugo*, for the appellee (plaintiff)

BRIGHT, J. This case returns to us on remand from our Supreme Court.[1] The defendant appeals from the judgment of the trial court opening the judgment of dissolution and reissuing financial orders. On appeal, the defendant claims that the trial court erred in its method of dividing the parties' assets because it failed to take into account an advance payment made by the plaintiff to the defendant. Although the defendant raises this claim for the first time on appeal, we exercise our discretion to consider the claim on the merits, and we affirm the judgment of the trial court.

The following undisputed facts and procedural history are relevant to our resolution of this appeal. On January 16, 2008, the plaintiff, Beatrice Forgione, commenced this dissolution action against the defendant, Mennato Forgione. On July 7, 2008, the parties entered into a prejudgment stipulation in which they agreed that the plaintiff would have exclusive possession of the marital home, and, in exchange, the plaintiff would pay the defendant $60,000 as an "advance" against the defendant's equitable distribution. The $60,000 advance represented approximately one half of the total equity in the marital home at that time. The plaintiff later testified that she obtained the $60,000 by way of a personal loan from one of her friends and, thereafter, paid the advance to the defendant. This testimony was corroborated by the plaintiff's itemization of a $60,000 liability, which she specifically identified as a "[l]oan for [a]dvance to [h]usband re property [distribution]," on her August 26, 2009 financial affidavit.

On August 26, 2009, the court rendered judgment dissolving the marriage of the parties. The dissolution judgment incorporated the parties' stipulated agreement that resolved, among other things, the issues of custody, insurance, distribution of marital assets and liabilities, child support, and alimony. The parties stipulated, in relevant part, that the defendant would transfer his interest in the marital residence to the plaintiff in consideration of the $60,000 advance that the plaintiff previously had paid to the defendant, and that the parties each would retain the remaining assets listed on their respective financial affidavits, including "deferred compensation" plans.

On March 12, 2012, the plaintiff filed a motion to open the dissolution judgment on the ground that the defendant intentionally had failed to disclose commissions he had received just prior to the dissolution judgment. On May 30, 2012, the parties entered a postjudgment stipulation to open the dissolution judgment for the purpose of redetermining "all issues of a financial nature . . . ." On the same date, the court approved the stipulation and opened the judgment.

On November 6, 2013, after a three day trial, the court

issued a memorandum of decision in which it entered new financial orders concerning, among other things, child support, insurance, property distribution, liabilities, bank accounts and retirement funds, and counsel fees. As for property distribution, the court, in its new orders, recognized that the plaintiff previously had paid the $60,000 advance to the defendant and, thus, ordered the defendant to transfer his title to the marital residence to the plaintiff. As for bank accounts and retirement funds, the court ordered, in relevant part, that the "parties shall equally divide the remaining financial assets of the marriage." On November 22, 2013, the defendant filed a motion seeking reargument of the court's new financial orders regarding insurance and sanctions, and clarification as to the operative date that should be utilized when equalizing the parties' financial assets.

On February 3, 2014, after a hearing, the court issued a memorandum of decision addressing the disputes as to insurance and sanctions, and, further, deferring the selection of the "operative date of equalization of financial assets" until after the court received additional briefing from the parties. Accordingly, on February 26, 2014, the plaintiff filed a brief contending that the operative date should be the date of dissolution, August 26, 2009, and proffering a mathematical calculation of the parties' financial assets—bank accounts and retirement funds—on that date. On March 12, 2014, the defendant filed a brief concurring that the operative date should be August 26, 2009; however, he disagreed that the plaintiff's calculation "should have been made a part of the legal memorandum and, therefore, wishe[d] [it] stricken." The defendant provided no substantive objection to the plaintiff's calculation, and provided no calculation of his own.

On June 3, 2014, the court issued a memorandum of decision dividing the "remaining financial assets of the marriage." Therein, the court determined that the plaintiff's financial assets listed on her August 26, 2009 affidavit totaled $45,946, that the defendant's financial assets listed on his August 26, 2009 affidavit totaled $135,500,[2] and, consequently, the court ordered the defendant to pay the plaintiff an equalization payment of $44,777. The court adopted the method of calculation set forth by the plaintiff in her posttrial brief and only incorporated the financial assets that were itemized in the "bank accounts" and "deferred compensation plans" categories of the parties' respective affidavits. Thus, the court's calculation did not include the $60,000 advance payment received by the defendant, the $120,000 of equity in the marital home retained by the plaintiff, or the $60,000 loan the plaintiff took to make the advance payment to the defendant.[3] This appeal followed. See footnote 1 of this opinion.

On appeal, the defendant claims that the court erred

in its method of dividing the parties' financial assets because it failed to take into consideration the $60,000 advance against the defendant's equitable distribution and the resultant transfer of equity in the marital residence to the plaintiff. In response, the plaintiff contends, in relevant part, that we should decline to review the defendant's claim because it is raised for the first time on appeal. We agree with the plaintiff that the defendant did not preserve his claim properly; nevertheless, pursuant to the factors set forth by our Supreme Court in *Blumberg Associates Worldwide, Inc.* v. *Brown & Brown of Connecticut, Inc.*, 311 Conn. 123, 157–58, 84 A.3d 840 (2014), we will exercise our discretion to consider the claim on the merits. We affirm the judgment of the trial court.

"It is well settled that [o]ur case law and rules of practice generally limit [an appellate] court's review to issues that are distinctly raised at trial. . . . [O]nly in [the] most exceptional circumstances can and will this court consider a claim, constitutional or otherwise, that has not been raised and decided in the trial court. . . . The reason for the rule is obvious: to permit a party to raise a claim on appeal that has not been raised at trial—after it is too late for the trial court or the opposing party to address the claim—would encourage trial by ambuscade, which is unfair to both the trial court and the opposing party." (Internal quotation marks omitted.) *Chief Disciplinary Counsel* v. *Rozbicki*, 326 Conn. 686, 695, 167 A.3d 351 (2017), cert. denied,      U.S.    , 138 S. Ct. 2583, 201 L. Ed. 2d 295 (2018); see also Practice Book § 60-5 ("court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial").

"A claim must be so stated as to bring to the attention of the court the *precise* matter on which its decision is being asked." (Emphasis in original; internal quotation marks omitted.) *State* v. *Fay*, 326 Conn. 742, 766, 167 A.3d 897 (2017). "[T]he determination of whether a claim has been properly preserved will depend on a careful review of the record to ascertain whether the claim on appeal was articulated below with sufficient clarity to place the trial court [and the opposing party] on reasonable notice of that very same claim." (Internal quotation marks omitted.) *Eubanks* v. *Commissioner of Correction*, 329 Conn. 584, 598, 188 A.3d 702 (2018).

Our Supreme Court addressed this issue on circumstances substantially similar to those presented here in *Intercity Development, LLC* v. *Andrade*, 286 Conn. 177, 182–89, 942 A.2d 1028 (2008). In *Intercity Development, LLC*, the plaintiff sought to foreclose on a mechanic's lien it had recorded on the defendants' property in connection with its construction of a house on the property. Id., 181. The plaintiff sought a judgment in the amount of $49,933.19 based on the amount it claimed was still owed under the parties' contract less the cost of com-

pleting its work. Id., 186–87. The defendants did not challenge at the trial court the methodology of the plaintiff's calculation of damages, and the court relied on that calculation when it rendered judgment for the plaintiff in the amount of $49,933.19. Id., 188–89. On appeal to this court, the defendants argued that the amount of the judgment was in error because it was not based on the value of the services rendered or the materials furnished. *Intercity Development, LLC* v. *Andrade*, 96 Conn. App. 608, 609, 901 A.2d 731 (2006), rev'd, 286 Conn. 177, 182–89, 942 A.2d 1028 (2008). This court agreed and reversed the judgment of the trial court. Id., 611–14. After granting certification, our Supreme Court reversed this court's decision because the challenge to the methodology used by the trial court to calculate the amount of damages was raised for the first time on appeal. Specifically, our Supreme Court held that "[b]ecause the defendants never contested the plaintiff's calculation of the lien amount at trial, the Appellate Court should have declined to review the defendants' claim of impropriety in the trial court's method of valuation of the lien." *Intercity Development, LLC* v. *Andrade*, supra, 188. The court also rejected the defendants' claim that the trial court's error arose only after trial, and therefore was the proper subject of their appeal, because the plaintiff's method of calculation was set forth in its complaint, trial testimony, and posttrial brief. Id., 188–89.

After a careful review of the record, we conclude, consistent with our Supreme Court's analysis in *Intercity Development, LLC*, that the defendant failed to raise distinctly the present claim before the trial court. The defendant did not argue before the trial court that it should take into account the advance payment, or any element of the parties' exchange regarding the marital home, when dividing the parties' remaining financial assets, and he did not proffer any calculation that included the advance payment. He certainly did not advocate to the trial court the argument that he has made on appeal. Although the defendant objected to the calculation as set forth in the plaintiff's February 26, 2014 brief, it was on the procedural ground that it improperly was included in a memorandum of law, not on the substantive ground he now advances on appeal. When presented with the plaintiff's method of calculation, it became the defendant's responsibility to raise distinctly his dispute regarding the calculation before the trial court. See id., 188–89; *Histen* v. *Histen*, 98 Conn. App. 729, 736–37, 911 A.2d 348 (2006) (declining to review claim that trial court made erroneous calculation because claim was never made before trial court). Indeed, after the court issued its June 3, 2014 decision containing the purportedly erroneous division, the defendant did not file a motion seeking to reargue that decision; rather, the defendant took an appeal therefrom. See *Intercity Development, LLC* v. *Andrade*,

supra, 189.

Despite the defendant's failure to raise his claim properly in the trial court, we exercise our discretion to reach the merits of the defendant's claim, which was briefed by both parties, because "the minimal requirements for review [have been] met and . . . the party who raised the unpreserved claim cannot prevail." (Citation omitted; emphasis omitted; footnote omitted.) *Blumberg Associates Worldwide, Inc.* v. *Brown & Brown of Connecticut, Inc.*, supra, 311 Conn. 157–58.[4] The record reveals that the defendant's claim is without merit. First, contrary to the defendant's claim, the court did take the $60,000 advance into consideration when it issued new financial orders. In the November 6, 2013 memorandum of decision, the court recognized that the plaintiff previously had paid the $60,000 advance to the defendant and, thus, ordered the defendant to transfer his title to the marital residence to the plaintiff. The defendant acknowledges this fact, yet, still claims on appeal that the court's division was unequal.

In support of his claim, the defendant proffers several calculations that merge the court's division of the parties' remaining financial assets with the court's division of the marital home. Therein, the defendant misrepresents the plaintiff's financial assets by affording her an additional $60,000 of cash for the advance payment, which was not encumbered by a corresponding liability. The defendant's injection of unencumbered cash is unsupported by the record because there is no indication that the plaintiff readily had $60,000 of cash available to pay to the defendant. To the contrary, the plaintiff's testimony and her financial affidavit, which represent the only evidence in the record relating to this issue, demonstrate that she obtained the $60,000 by way of a personal loan from a friend. The defendant's calculations, however, fail to account for or even consider this evidence. Instead, the defendant's argument is based on pure conjecture as to the source of the advance payment to the defendant. Thus, the premise of the defendant's argument—that the plaintiff received a $60,000 net gain as a result of the transfer of assets related to the marital home—finds no support in the record, and is, in fact, contradicted by it. Therefore, we are unpersuaded by the defendant's claim.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] This court previously determined that General Statutes § 46b-86 (a) deprived the trial court of subject matter jurisdiction to open, pursuant to the parties' stipulation, the dissolution judgment for the purpose of redividing the parties' marital assets. See *Forgione* v. *Forgione*, 162 Conn. App. 1, 129 A.3d 766 (2015), remanded for reconsideration, 328 Conn. 922, 181 A.3d 92 (2018). Subsequently, our Supreme Court granted the plaintiff's petition for certification and remanded the case to us with direction to reconsider our decision in light of *Reinke* v. *Sing*, 328 Conn. 376, 179 A.3d 769 (2018) (holding that § 46b-86 [a] does not deprive trial court of subject matter jurisdiction, and that trial court properly exercised its statutory authority under General Statutes § 52-212a to open dissolution judgment because

parties voluntarily submitted to court's jurisdiction). See *Forgione* v. *Forgione*, 328 Conn. 922, 181 A.3d 92 (2018). At the outset, we conclude that the trial court in the present case had subject matter jurisdiction and properly exercised its statutory authority because, as in *Reinke*, the parties entered into a postjudgment stipulation to open the dissolution judgment so that the court could address anew all financial matters, including the division of assets.

[2] The defendant updated his August 26, 2009 affidavit in 2013 to reflect, among other things, the commissions he failed to include in the affidavit he provided at the time the original judgment of dissolution was entered. The court relied on the updated affidavit in entering the June 3, 2014 judgment.

[3] Although the $120,000 of equity in the marital home and the $60,000 liability incurred by the plaintiff to make the advance payment to the defendant were listed on the plaintiff's affidavit, the $60,000 advance was not listed on the defendant's updated affidavit. The defendant maintains that he spent the $60,000 advance prior to the date of dissolution and, alternatively, that any remaining funds derived from the advance payment were retained in his bank account.

[4] "Reviewing an unpreserved claim when the party that raised the claim cannot prevail is appropriate because it cannot prejudice the opposing party and such review presumably would provide the party who failed to properly preserve the claim with a sense of finality that the party would not have if the court declined to review the claim." *Blumberg Associates Worldwide, Inc.* v. *Brown & Brown of Connecticut, Inc.*, supra, 311 Conn. 158 n.28.